## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

MARY CHAVEZ, *et al.*,           )     Case No. 4:19-cv-958
                                   )
        Plaintiffs,       )     Judge J. Philip Calabrese
                                   )
v.                         )     Magistrate Judge
                                   )     Carmen E. Henderson
FALCON TRANSPORT CO., *et al.*,   )
                                   )
        Defendants.      )
                                   )

## ORDER GRANTING CLASS CERTIFICATION,
## FINAL APPROVAL OF SETTLEMENT, AND ASSOCIATED RELIEF

On October 21, 2019, four named plaintiffs filed a master consolidated amended class action complaint alleging that Defendants Falcon Transport Company, G.D. Leasing of Indiana, Inc., Counterpoint Capital Partners, LLC, Chris Broussard, and Nick Schrader terminated them without receiving sixty-day notice, breached their fiduciary duties, failed to submit to the Falcon Transport/GD Leasing Co. of Indiana Group Health Plan, and committed other violations pursuant to the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2104, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* (ECF No. 42, ¶ 1-5, PageID #252.)  Following several mediation conferences with the Magistrate Judge, the parties reached a settlement.  Previously, the Court granted preliminary approval.  (ECF No. 92.)  After notice to class members, the Court held a fairness hearing on final approval of the settlement on March 24, 2025 and took the motion for final approval of the settlement under advisement.  For the reasons that

follow, the Court **GRANTS** the parties' joint motion and **DISMISSES** this case **WITH PREJUDICE**.

## FACTUAL AND PROCEDURAL BACKGROUND

Lead plaintiff, Mary Chavez, first brought this action in April 2019, on behalf of the named plaintiffs and others similarly situated, under and Rule 23. (ECF No. 1.) In October 2019 Mary Chavez and three other named Plaintiffs filed a master consolidated amended class action complaint, the operative complaint. (ECF No. 42.) There are 570 members of the Rule 23 class and no opt-outs. (ECF No. 94, PageID #755.)

The Representative Plaintiffs formerly worked for Defendant Falcon Transport Company and/or its alter egos and affiliates Defendants G.D. Leasing of Indiana, Inc., and Counterpoint Capital Partners, LLC. (ECF No. 42, ¶ 20-33, PageID #255-56.) Falcon Transport Company, a trucking company, was an Ohio corporation. (*Id*., ¶ 11, PageID #253.) G.D. Leasing of Indiana, Inc. is an Indiana Corporation and wholly owned subsidiary of Falcon Transport that employed drivers of Falcon Transport. (*Id*., ¶ 12, PageID #253-54.) Counterpoint Capital Partners, LLC, a Delaware limited liability company, purchased Falcon Transport in or around September 2017. (*Id*., ¶ 13, PageID #254.) According to the complaint, the Representative Plaintiffs allege that they had accrued vacation time for which they were not paid, their health plans were terminated, and they had business expenses that Defendants had not paid. (*Id*., ¶ 20-38, PageID #255-56.) Defendants deny these allegations. (*See* ECF No. 44; ECF No. 45; ECF No. 46; ECF No. 47; ECF No. 48.)

### A.    Discovery and Mediation

The parties explored their claims and defenses through discovery before undertaking mediation, which proved to be time consuming but fruitful.  Counsel engaged in preliminary discovery and early private mediation, but eventually turned to the Court for assistance.  The mediation efforts with the Magistrate Judge are provided in detail.  First, the parties engaged in *ex parte* pre-mediation conferences with the assigned Magistrate Judge.  (*See* Minutes, Aug. 8, 2022.)  They attended mediation and agreed to engage a third-party administrator before continuing discussions.  (*See* Minutes, Aug. 10, 2022.)  Then, the parties spent substantial time assessing and reviewing medical claims and data.  (ECF No. 74; ECF No. 75; ECF No. 77; ECF No. 78.)  The parties again completed *ex parte* mediation conferences before engaging in two days of mediation.  (*See* Minutes, Mar. 26, 2024; Minutes, Mar. 27, 2024; Minutes Apr. 11, 2024.)  Following several additional calls and conferences, the parties confirmed that they were finalizing settlement terms with the assistance of the Department of Labor.  (*See* Minutes, Sept. 30, 2024.)

### B.    Settlement

On December 12, 2024, the Court received the parties' proposed settlement and joint motion for preliminary approval.  (ECF No. 91.)  Under the settlement, Defendants agreed to pay a total of $400,000, without admitting liability.  (ECF No. 91-1, ¶ 10, PageID #552; ECF No. 91, ¶ 3, PageID #547.)  That amount covers several separate payments.

*First*, it covers payments to two tiers comprising the 570 individuals in the class.  (ECF No. 94, ¶9, PageID #757.)  Those in tier one will submit a claim form as

well as any other necessary validating information relating to (1) healthcare costs that the claimant paid for medical services rendered on or before April 27, 2019 that the claimant alleges would have been paid by the Falcon Health Plan, plus (2) healthcare costs that healthcare providers are still seeking from the claimant for medical services rendered on or before April 27, 2019 that claimant alleges would have been paid by the Falcon Health Plan.  (*Id*., n.3, PageID #758.)  If the first round tier one settlement payments equal or exceed the net settlement fund, the aggregate first round individual settlement payments shall be reduced pro rata by no less than $72,000 to avoid aggregate payments that exceed the net settlement fund and to provide a minimum flat payment of at least $100 to each tier two claimant.  (*Id*.)  If the total amount of first round tier one claimant individual settlement payments and tier two claimant minimum flat payments is less than the net settlement fund, the remaining funds will be split evenly among the tier two claimants and added as part of their tier two claimant minimum flat payment.  (*Id*.)

*Second*, the settlement covers attorneys' fees, litigation costs, and administration expenses.  It specifies that class counsel will receive a fee award of $128,000.00 and reimbursement of $8,747.50 in litigation costs.  (ECF No. 94, ¶10, PageID #758; *Id*., ¶11, PageID #759.)  Litigation costs include the case filing fee, service costs, postage, and mediation-related fees.  (*Id*, n.5, PageID #759.) Additionally, $19,080.48 will be paid to the Settlement Administrator.  (*Id*., ¶ 11, PageID #759.)

*Third*, the settlement provides for service awards to the named Plaintiffs in the amount of $4,000.  (ECF No. 91-1, ¶10, PageID #552.)  The Representative Plaintiffs represent that they expended significant time by instituting this litigation, responding to phone calls and inquiries from other potential class members, and attending the mediation and fairness hearing.  (*Id.*, ¶ 22, PageID #560.)

### C.    Preliminary Approval

On January 9, 2025, the Court granted preliminary approval to the settlement. (ECF No. 92.)  That order also conditionally certified the settlement class, appointed Mary E. Olsen and M. Vance McCrary of The Gardner Firm, P.C.; Robert J. Dubyak and Christina C. Spallina of Dubyak Nelson, LLC; Stuart Miller of Lankenau & Miller, LLP; and James M. Kelley, III and Gary Cowan of Elk & Elk Co. Ltd. as interim class counsel, and scheduled a fairness hearing.  (*Id.*, ¶ 7, 14, & 15 PageID #660, 662.)  Further, it approved the notice form (ECF No. 91-4) and directed the process for notice in advance of the fairness hearing (ECF No. 92, ¶ 10, PageID #660–61).

### D.    Progress Toward Final Approval

Consistent with the Court's preliminary approval order, Class Counsel provided 570 personalized class notices to the Settlement Administrator on January 15, 2025.  (ECF No. 94, ¶ 4, PageID #755.)  On January 24, 2025, the Settlement Administrator printed and mailed the class notice by first class mail to the 570 class members at their last known addresses.  (*Id.*)  Class members had thirty-five days, until February 28, 2025, to opt-out or object to the settlement agreement.  (*Id.*, ¶ 5, PageID #755.)  There are no unresolved returns of any class notices.  (*Id.*, ¶ 7, PageID

5

#756.)  The Court held a fairness hearing on March 24, 2025 and confirmed there were no unresolved returns of any class notice.

## ANALYSIS

Under Rule 23(e), "a class proposed to be certified for purposes of settlement" requires court approval.  A court may approve the settlement only after a hearing and only on a finding that the settlement "is fair, reasonable, and adequate" after considering certain factors listed in the Rule.  Fed. R. Civ. P. 23(e)(2).  The Rule directs the Court to consider the representation class counsel provided, whether the parties negotiated the settlement at arm's length, the adequacy of the relief provided to the class, and the treatment of class members relative to one another.  *Id.*  Further, under a prior version of the Rule, the Sixth Circuit identified additional considerations that guide the inquiry into whether a class settlement is fair, reasonable, and adequate.  *See, e.g.*, *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016).  These additional considerations include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.* (quoting *International Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).  In 2018, an amendment to the Rule emphasized that the central inquiry remains whether the settlement is fair, reasonable, and adequate.

In addition, the requirements of Rule 23(e) for approval of a class settlement sit on top of the other safeguards in Rule 23 for class certification.  To obtain class

certification, Plaintiffs must prove that they satisfy the four procedural requirements in Rule 23(a) and at least one requirement in Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  The Court proceeds to analyze each of these requirements under Rule 23(a), Rule 23(b), and Rule 23(e).

## I.     Certification of the Settlement Class

The Settlement Class consists of the individuals listed on Schedule 1 to the Settlement Agreement, who are (a) individuals with outstanding claims against the Falcon Transport Co. Health Plan, as identified on the "ProMedica Unfiltered Spreadsheet" produced in November 2023 by the parties' joint third-party administrator, ProMedica; (b) the primary insured employees of Falcon Transport Co. or G.D. Leasing of Indiana for any individual(s) listed on the ProMedica Unfiltered Spreadsheet who was a dependent of the primary insured employee of Falcon Transport Co. or G.D. Leasing of Indiana for said dependent(s), and (c) employees employed by Falcon or G.D. Leasing of Indiana from in or about January 2019 to in or about April 2019 who had payroll deductions for contributions to the Falcon Health Plan but had no alleged outstanding claims on the ProMedica Unfiltered Spreadsheet for themselves or any dependent who do not opt-out of this settlement.  (ECF No. 91-1, ¶ 7, PageID #548.)   In its preliminary approval order, the Court conditionally certified the class.  (ECF No. 92, ¶¶ 8, PageID #660.)

### I.A.   Rule 23(a)

The class satisfies Rule 23(a)'s procedural requirements.  Rule 23(a) requires numerosity, commonality, typicality, and adequacy.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Additionally, the Sixth Circuit has adopted an implicit

ascertainability requirement.  *See Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016) (citing, among other authorities, *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)).

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The Rule 23 class has 570 members.  This amount is substantial enough for the class to satisfy the numerosity requirement. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006); *Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-cv-00983, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) (noting that a class of 40 or more is generally sufficiently numerous).

Commonality requires the class to share common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  To assess commonality, courts consider whether there is a common contention that, if resolved, would address all claims "in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Here, the class's claim turns primarily on a common issue:  an employee claimant and/or dependent claimant with allegedly outstanding claims against the Falcon Transport Co. Health Plan, as identified on the "ProMedica Unfiltered Spreadsheet" and/or primary insured employee of Falcon Transport Co. or G.D. Leasing of Indiana for any individual(s) listed on the "ProMedica Unfiltered Spreadsheet" who was a dependent of the primary insured employee of Falcon Transport Co. or G.D. Leasing of Indiana for said dependent(s) and/or employees employed by Falcon Transport Co. or G.D. Leasing of Indiana from in or about January 2019 to in or about April 2019 who had payroll deductions for contributions to the Falcon Health Plan but had no alleged outstanding claims on the

8

"ProMedica Unfiltered Spreadsheet" for themselves or any dependent.  (ECF No. 91-1, PageID #549-50.)  In short, the parties agree for purposes of settlement only that the settlement class members' claims raise common issues regarding the Falcon Health Plan.  (*Id.*, PageID #550.)

Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  A named plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citing *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).  Here, the Representative Plaintiffs have claims typical of the other proposed members of the settlement class.  (ECF No. 91-1, PageID #550.)

Adequacy requires "the representative parties [to] fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit articulates two criteria for determining adequacy:  "(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. General Motors Corp.*, 532 F.2d 511, 524 (6th Cir. 1976) (citations omitted).  Class Counsel are well qualified and experienced to represent the settlement class members.  (ECF No. 91-1, PageID #550.)  Collectively, they have been appointed as Class Counsel in more than one hundred class actions.  (*Id.*) Additionally, the Representative Plaintiffs have no conflict of interest with the other

proposed settlement class members, and have diligently prosecuted, represented, and protected the interests of the settlement class.  (*Id.*)

Finally, ascertainability requires that a class definition be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class."  *Young*, 693 F.3d at 537–38 (citation omitted).  In this case, the ProMedica spread sheet works to provide the names of class members and provides ascertainability.  Therefore, the class is sufficiently definite.

### I.B.    Rule 23(b)(3)

Likewise, the class satisfies a requirement of Rule 23(b), specifically Rule 23(b)(3).  To certify a class, Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In making these findings, courts consider (1) the interests of class members in individually controlling the litigation; (2) the extent and nature of any litigation concerning the dispute class members have already initiated; (3) the desirability of concentrating litigation of the claims in the particular forum; and (4) the likely difficulties in managing the class action.  *Id.*

### I.B.1. Predominance

Predominance "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  "To meet the predominance requirement, a plaintiff must establish that issues subject to

generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quotation omitted). Where predominance is satisfied, if a plaintiff cannot prove at trial a common question that predominates over individual issues, the claim will fail on the merits for the entire class. *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 858 (6th Cir. 2013) (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013)).

Here, the class is sufficiently cohesive. The success of the class's claim turns on common questions regarding Plaintiffs' entitlement to reimbursement or payment for medical claims and/or reimbursement from the Falcon Health Plan. Answering that question does not require the Court to consider facts specific to individuals—at least not to a degree that would cause any individual inquiry to predominate over the common questions capable of class wide resolution. While some matters vary among class members, such as the amount of reimbursement, that dissimilarity does not defeat a finding of predominance for the class. *See Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (citation omitted).

### I.B.2. Superiority

Superiority requires courts to consider whether a class action "is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin*, 458 F.3d at 554). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Young*, 693 F.3d at 545 (quoting *Amchem*, 521 U.S. at

617 (citation omitted)). Without a class action, then, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

Tier two presents a textbook case appropriate for class certification. Each member of that group may only receive $100. (ECF No. 94, n.3, PageID #757.) Given the Court's filing fee of $402.00 alone, members of group have next to no incentive to bring individual actions, making a class action the superior method of adjudication. *See Amchem*, 521 U.S. at 617.

Tier one of the Rule 23 class presents a closer call. Members of this group may recover a larger amount than the $402, that will be determined after final approval. However, some members may still receive less than the filing fee, and amounts sufficiently small to justify class litigation. Ultimately, superiority asks whether class adjudications will "achieve economies of time, effort, and expense." *Amchem*, 521 U.S. at 615. On this account, a class action is the superior method of adjudication. The class consists of 570 members. Many will receive amounts that would not be worth pursuing on an individual basis. Resolving all claims in one action avoids a multiplicity of litigation and promotes judicial economy, even with the burdens of class machinery.

Additionally, the factors listed in Rule 23(b)(3) support a finding of superiority. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). First, there is no evidence that members of the class desire to bring litigation separately. (ECF No. 91-1, ¶8, PageID #551.) Indeed,

when given the option to request exclusion, not a single class member opted out. (ECF No. 94, ¶6, PageID #755.)  Second, there is no related pending litigation.  (ECF No. 91-1, ¶8, PageID #551.)  Finally, concentrating litigation in one forum will foster efficiency and minimize expenses.

For these reasons, the Court finds that a class action is a superior method for adjudicating the claims of the class.

*     *     *

Satisfied that they meet the requirements of Rule 23(a) and Rule 23(b)(3), the Court **CERTIFIES** the Rule 23 class for purposes of settlement.

## II.   Appointment of Class Counsel

Because the Court certifies a class, it must appoint class counsel.  Fed. R. Civ. P. 23(g)(1).  Previously, it appointed Mary E. Olsen and M. Vance McCrary of The Gardner Firm, P.C.; Robert J. Dubyak and Christina C. Spallina of Dubyak Nelson, LLC; Stuart Miller of Lankenau & Miller, LLP; and James M. Kelley, III and Gary Cowan of Elk & Elk Co. Ltd.   (ECF No. 92, ¶ 14, PageID #662

A court may appoint an applicant as class counsel "only if the applicant is adequate under Rule 23(g)(1) and (4)."  Fed. R. Civ. P. 23(g)(2).  Under Rule 23(g)(1)(A), the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  Also, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately

13

represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  Finally, Rule 23(g)(4) requires class counsel to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

With these factors in mind, the Court finds that Mary E. Olsen and M. Vance McCrary of The Gardner Firm, P.C.; Robert J. Dubyak and Christina C. Spallina of Dubyak Nelson, LLC; Stuart Miller of Lankenau & Miller, LLP; and James M. Kelley, III and Gary Cowan of Elk & Elk Co. Ltd. satisfies Rule 23(g)(1) and (4).  Counsel has thoroughly identified and investigated the potential claims.  During the fairness hearing, Class Counsel detailed their efforts and time spent in this litigation. Additionally, Class Counsel has collectively been appointed to work on over 100 class action cases.  (ECF No. 91-1, ¶23, PageID #561.)

As to the third factor, counsel's work throughout this litigation has demonstrated sufficient knowledge of the law.  (*See, e.g.*, ECF No. 91; ECF No. 94.) On this record, and because counsel has vigorously represented Plaintiffs, the Court further finds that Mary E. Olsen and M. Vance McCrary of The Gardner Firm, P.C.; Robert J. Dubyak and Christina C. Spallina of Dubyak Nelson, LLC; Stuart Miller of Lankenau & Miller, LLP; and James M. Kelley, III and Gary Cowan of Elk & Elk Co. Ltd. has and will fairly and adequately represent the class.

Accordingly, the Court **APPOINTS** Mary E. Olsen and M. Vance McCrary of The Gardner Firm, P.C.; Robert J. Dubyak and Christina C. Spallina of Dubyak Nelson, LLC; Stuart Miller of Lankenau & Miller, LLP; and James M. Kelley, III and Gary Cowan of Elk & Elk Co. Ltd. as class counsel.

## III.    Approval of the Settlement

The settlement seeks to resolve a Rule 23 class action.  (*See* ECF No. 91.) Approval of a settlement occurs in three stages.  *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021) (citations omitted).  First, the court preliminarily approves the parties' proposed settlement.  *Id.*  Second, the parties provide class members notice of the proposed settlement.  *Id.*  Finally, following a hearing, the court issues final approval.  *Id.*  Previously, on January 9, 2025, the Court granted preliminary approval (ECF No. 92), and the parties began the notice process on January 15, 2025. (ECF No. 94, ¶4, PageID #755.)  At this third and final stage, a court determines whether the notice process was sufficient and whether the proposed settlement agreement is fair, reasonable, and adequate.  *Harsh v. Kalida Mfg., Inc.*, No. 3:18-cv-2239, 2021 WL 4145720, at *3 (N.D. Ohio Sept. 13, 2021).

### III.A. Sufficient Notice

Rule 23(c)(2)(B) requires all members of a class certified under Rule 23(b)(3), who can be identified through reasonable effort, to receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  Further, the notice "must clearly and concisely state in plain, easily understood language" all the information specified in Rule 23(c)(2)(B)(i)–(vii).  *Id.*  Finally, the notice must comply with due process.  *See Barnes v. Winking Lizard, Inc.*, No. 1:18-cv-952, 2019 WL 1614822, at *4 (N.D. Ohio Mar. 26, 2019); *Harsh*, 2021 WL 4145720, at *4.

In granting preliminary approval, the Court approved the form for class notice and the protocol for distribution of it as consistent with Rule 23(c)(2)(B) and due process.  (ECF No. 92, ¶ 10, PageID #660-61.)  Therefore, the question becomes

15

whether the results of the notice process uncovered inadequacies.  *See Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *4 (S.D. Ohio Nov. 5, 2020).  Based on its independent review of the record, the Court finds none.  The Settlement Administrator sent class notices by first-class mail to the 570 class members.  (ECF No. 94, PageID ¶4, PageID #755.)  To the Court's knowledge, no notices were undeliverable, so all class members received notice.  (*Id*., ¶ 7, PageID #756.)  These results show no fatal deficiencies in notice.  Accordingly, the Court finds that the notice was the best practicable under the circumstances, as required under Rule 23(c)(2)(B), and consistent with due process.

### III.B. Settlement Terms

Under Rule 23(e)(2), a court may approve a proposed class settlement "*only . . . after* considering whether" (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided is adequate; and (4) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(A)–(D) (emphasis added).  Where relevant, the Court may also consider the factors set forth in *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *see McKnight v. Erico Int'l Corp.*, 655 F. Supp. 645, 661–62 (N.D. Ohio 2023) (discussing the 2019 amendment to the Rule and factors to apply when considering final approval of a class action settlement).

### III.B.1. Adequate Representation

First, Rule 23(e)(2)(A) requires a court to consider the "actual performance" of class representatives and counsel. *See also* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. This factor is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)." 4 *Newberg and Rubenstein on Class Actions* § 13:49 (6th ed.) Here, the named Plaintiffs and Class Counsel have performed adequately. Class Counsel conducted document review, engaged in lengthy settlement negotiations, and recovered $400,000.00 for Plaintiffs. (ECF No. 91-1, PageID #287; ECF No. 94, ¶9, PageID #756.) Class Counsel further detailed their litigation efforts at the fairness hearing. The named Plaintiffs, also called the Representative Plaintiffs, aided in the litigation by willingly assisting counsel through the years since the inception of the case. (ECF No. 91-1, ¶ 22, PageID #560.) Accordingly, this factor favors approval.

### III.B.2. Arm's Length Negotiation

Next, the parties must negotiate the settlement at arm's length. Fed. R. Civ. P. 23(e)(2)(B). "This inquiry aims to root out . . . 'collusive settlements.'" 4 *Newberg and Rubenstein on Class Actions* § 13:50 (6th ed.); *see also UAW*, 497 F.3d at 631. In this case, the record contains no evidence of collusion. At each stage of the litigation, the parties engaged in an adversarial bargaining process. First, the parties engaged in *ex parte* pre-mediation conferences with the assigned Magistrate Judge. (*See* Minutes, Aug. 8, 2022.) Parties then spent substantial time reviewing discovery related to medical claims and data. (ECF No. 74; ECF No. 75; ECF No. 77; ECF No. 78.) After completing *ex parte* mediation conferences again, the parties completed

17

two days of mediation.  (*See* Minutes, Mar. 26, 2024; Minutes, Mar. 27, 2024; Minutes Apr. 11, 2024.)  Finally, after several additional conferences and calls, the parties confirmed they had settled.  (*See* Minutes, Sept. 30, 2024.)  Additionally, the parties reached the settlement through a neutral mediator, the Magistrate Judge.  The initial *ex parte* pre-mediation conference to the finalization of settlement took almost two years.  Therefore, the second factor is also satisfied.

### III.B.3. Adequate Relief

In assessing whether the relief is adequate, the Court must take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  Considering these factors and as explained below, the Court finds that the relief provided is adequate.  (ECF No. 91-1, ¶ 10, PageID # 552.)

### III.B.3.i. Costs, Risks, and Delay

Litigating claims under the WARN Act or ERISA can be costly because such litigation is "highly specialized and complex."  *In re Partsearch Techs., Inc.*, 453 B.R. 84, 105 (Bankr. S.D.N.Y. 2011).  In this case specifically, where Defendants deny the allegations and have multiple defenses they would advance, continued litigation would be protracted and costly.  Additionally, continuing litigation presents substantial risks.  The litigation could extend for years, through appeal, without any certainty about the eventual outcome.  In the face of these risks and uncertainties,

the settlement provides a recovery in a timely manner that reasonably accounts for the various risks associated with continued litigation.

### III.B.3.ii. Effectiveness of Distribution Method

The settlement's distribution method also supports approval. This consideration requires the Court to ensure that claims processing (1) facilitates filing legitimate claims and (2) is not unduly demanding. Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. The settlement agreement accomplishes each. In short, the structure of the settlement provides for a minimum payment for class members that overcomes any disincentive from the claim form for tier one claimants. Therefore, the Court finds that these procedures will likely capture legitimate claims and effectively distribute settlement checks.

### III.B.3.iii. Attorneys' Fees and Timing

This consideration directs a court to examine the attorneys' fees requested and the timing of their payment. Fed. R. Civ. P. 23(e)(2)(C)(iii). In this case, Class Counsel seeks $128,000 in attorneys' fees, which amounts to one-third of the settlement fund. (ECF No. 94, PageID #758.) On this record, and for the reasons more fully discussed below, the Court finds that the requested attorneys' fees, and their timing, do not compromise the adequacy of relief.

### III.B.3.iv. Rule 23(e)(3) Agreements

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Here, the only such agreement is the settlement itself. (ECF No. 91-2.) Accordingly, there is no risk that "related undertakings . . . may have influenced the

terms of the settlement," and this sub-factor supports the adequacy of relief.  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2003 amendment.

### III.B.4. Equitable Treatment of Class Members

Finally, the Court must determine whether the settlement agreement treats class members equitably.  Fed. R. Civ. P. 23(e)(2)(D).  This factor "ensure[s] that similarly situated class members are treated similarly."  4 *Newberg and Rubenstein on Class Actions* § 13:56 (6th ed.).  The two tiers within the Rule 23 class meet this requirement.  As to tier one, individuals receive a recovery proportional to the outstanding medical claims for which seek reimbursement.  (ECF No. 94, PageID #757 n.3.)  This approach "takes appropriate account of differences among [each class member's] claims," specifically how much medical expenses were actually paid.  *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  And the members of tier two receive the same amount to cover the release of their claims.  (ECF No. 94, PageID #757 n.3.)

Arguably, the largest cause for concern lies in the named Plaintiffs' service awards.  Those awards create a $4,000.00 difference in recovery between the named and unnamed class members.  (ECF No. 91-1, ¶ 10, PageID #552.)  However, the Court remains unpersuaded that these awards raise issues of equity within the meaning of Rule 23(e)(2).  In this regard, the named Plaintiffs are not similarly situated to the other class members.  4 *Newberg and Rubenstein on Class Actions* § 13:56 (6th ed.).  They performed extra work.  (ECF No. 91-1, ¶ 22, PageID #560.)  And the service awards do not unfairly enrich the named Plaintiffs at the expense of

other class members.  Because the settlement agreement treats class members equitably, the fourth factor is met.

*      *      *

The factors listed in Rule 23(e)(2) favor final approval.  Therefore, the Court **APPROVES** the payment of $400,000 to the Rule 23 class as fair, reasonable, and adequate.  In accepting these terms, the Court **APPROVES** the release of Plaintiffs' claims as provided in the settlement agreement.

## IV.  Attorneys' Fees

Class counsel requests an award of attorneys' fees of $128,000. (ECF No. 94, ¶10, PageID #758.)  Rule 23(h) permits courts to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation."  *Gresky v. Checker Notions Co. Inc.*, No. 3:21-cv-01203, 2022 WL 3700739, at *7 (N.D. Ohio Aug. 26, 2022) (citing *Harsh*, 2021 WL 4145720, at *7).  Accordingly, the Court must ensure that "counsel is fairly compensated for the amount of work done as well as for the results achieved."  *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

Under ERISA, the statute permits an award of "a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  To measure the reasonableness of fees, courts within the Sixth Circuit often use the percentage-of-the-fund method with a lodestar cross-check.  *See Shy v. Navistar Int'l Corp.*, No. 3:92-cv-00333, 2022 WL 2125574, at *8 (S.D. Ohio June 13, 2022) (collecting cases). Factors to consider when analyzing the fee award as a percentage of the common fund

21

include:  (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."  *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

*First*, Class Counsel explains that they secured a substantial benefit, considering that Falcon Transport Co., G.D. Leasing of Indiana, Inc., and Counterpoint Capital Partners, LLC are defunct entities.  (ECF No. 94, PageID #760.)  *Second*, Class Counsel explains that this matter was filed in 2019 and litigation has proceeded since then.  (*Id.*, PageID #761.)  Further, the fees sought fall far below what counsel would have earned from hourly fees, and Class Counsel still has additional work to do:  responding to members of the settlement class and coordinating with the Settlement Administrator.  (*Id.*)  *Third*, Plaintiffs who personally retained Class Counsel agreed to pursue the case on a contingency-fee basis.  (*Id.*)  Fourth, Class Counsel highlight the importance of attorneys being compensated when they take on cases that carry risks of receiving no compensation.  (*Id.*)  *Fifth* and *sixth*, Class Counsel have been appointed in more than one hundred other class action suits, demonstrating their skill in handling complex class litigation of the sort this case involves.  (*Id.*)  All these factors weigh in favor of the reasonableness of the fees requested.

Ordinarily, the Court would use counsel's loadstar as a cross-check, but Class Counsel presented no information regarding the hours worked or their rates. Normally, these deficiencies would result in denial of a request for attorneys' fees. However, this case presents the rare, if not unique, case where the facts and circumstances allow a determination of the reasonableness of counsel's lodestar without the supporting documentation. Stretching over six years, Class Counsel engaged in discovery, numerous mediations, and meetings and negotiations with the Department of Labor. If these activities account for more than 250 hours of time, they would make an award of $128,000 reasonable using the lodestar method, yielding an average hourly rate of about $500. Based on the Court's supervision of these proceedings, there is no doubt that Class Counsel invested more than 250 hours in this litigation.

Accordingly, the Court finds that the attorneys' fees requested in the amount of $128,000.00 are fair and reasonable, and the Court **AWARDS** Class Counsel $128,000.00 in attorneys' fees.

## V.     Litigation Expenses and Administration Costs

Class Counsel ask the Court to approve payments of $19,080.48 and $8,747.50 to cover litigation expenses and the costs of settlement administration, respectively. (ECF No. 94, ¶ 11, PageID #759.)   Generally, class counsel are entitled to reimbursement of all reasonable and necessary expenses, including class-notice costs, incurred in the prosecution and settlement of the claims.   *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535; *see also Thompson v. Seagle Pizza, Inc.*, No. 3:20-cv-16, 2022 WL 1431084, at *13 (W.D. Ky. May 5, 2022).

In this case, different law firms serving as Class Counsel seek reimbursement of differing amounts. The Gardner Firm seeks $2,624.81 in reimbursement, which includes travel expenses relating to mediation, legal research charges, printing, and postage charges. (ECF No. 94, n.5, PageID #759.) Lankenau & Miller seek $2,312.42 in litigation costs that include filing fees, travel related to mediation, and legal research charges. (*Id.*) Dubyak Nelson/Elk & Elk seek reimbursement of $3,810.27 for mediator fees related to mediation, legal research charges, and postage. (*Id.*) Together, the firms seek $8,747.50 for litigation related costs and fees. (*Id.*) Further, the $19,080.48 covers the cost of noticing and settlement administration. (*Id.*) The Court finds that these expenses are reasonable and necessary for the claim's prosecution and settlement.

Therefore, the Court **APPROVES** the payment of $8,747.50 in litigation expenses and $19,080.48 in settlement administration costs.

## VI. Service Awards

Finally, the parties request that the Court approve service awards of $4,000 to the four Representative Plaintiffs. (ECF No. 91-1, ¶ 10, PageID #552.) Service awards are "awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). They "encourag[e] members of a class to become class representatives and reward[ ] individual efforts." *Id.* However, they are not accepted by every circuit. *See, e.g.*, *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1255–61 (11th Cir. 2020). There is an ongoing debate about whether a pair of nineteenth-century Supreme Court cases— *Trustees v. Greenough*, 105 U.S. 527 (1881), and *Central Railroad v. Pettus*, 113 U.S.

24

116 (1885)—prohibit service awards. *See Johnson*, 975 F.3d at 1255–61; *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340 (1st Cir. 2022); *Hyland v. Navient Corp.*, 48 F.4th 110, 123–24 (2d Cir. 2022); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785–87 (9th Cir. 2022).

For its part, the Sixth Circuit has neither approved nor disapproved the practice of service awards to class representatives. *In re Southern Ohio Corr. Facility*, 24 F. App'x 520, 526 (6th Cir. 2001); *Hadix*, 322 F.3d at 897. But it has recognized that "there may be circumstances where incentive awards are appropriate." *Hadix*, 322 F.3d at 898. Accordingly, district courts have authorized service awards based on class representatives' procured benefits, financial risks, and time expended. *See Barnes*, 2019 WL 1614822, at \*6; *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44, 2016 WL 7320890, at \*5 (W.D. Ky. Dec. 15, 2016).

Because the parties agreed in the settlement to service awards, and no person objected, the Court has no occasion to wade into the ongoing debate over whether the law permits such awards. Instead, based on the parties' agreement and absence of an objection, the Court will grant the service awards in this case. The Representative Plaintiffs expended significant time by instituting this litigation, responding to phone calls and inquiries from other potential class members, and attending the mediation and fairness hearing. (ECF No. 91-1, ¶ 22, PageID #560.) They consulted with class counsel at critical stages and provided important and necessary documents. (*Id.*)

Because of the nature of the Representative Plaintiffs' involvement, the Court **APPROVES** the requested service awards.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the oral motion for class certification, final approval of the settlement, and associated relief.  In doing so, the Court orders that the settlement agreement be implemented according to its terms and conditions and:

>   **CERTIFIES** the Rule 23 class for purposes of the settlement;

>   **APPOINTS** Mary E. Olsen and M. Vance McCrary of The Gardner Firm, P.C.; Robert J. Dubyak and Christina C. Spallina of Dubyak Nelson, LLC; Stuart Miller of Lankenau & Miller, LLP; and James M. Kelley, III and Gary Cowan of Elk & Elk Co. Ltd.as class counsel;

>   **APPROVES** the payment of $400,000 to the class;

>   **APPROVES** the release of Plaintiffs' claims;

>   **AWARDS** Mary E. Olsen and M. Vance McCrary of The Gardner Firm, P.C.; Robert J. Dubyak and Christina C. Spallina of Dubyak Nelson, LLC; Stuart Miller of Lankenau & Miller, LLP; and James M. Kelley, III and Gary Cowan of Elk & Elk Co. Ltd. $128,000

>   **APPROVES** the payment of 27,827.98; and

>   **APPROVES** the $4,000.00 service awards to the Representative Plaintiffs.

Further, the Court **DISMISSES** this action **WITH PREJUDICE**.  As the parties request, the Court retains jurisdiction to enforce the terms of the settlement and resolve any related disputes.

>   **SO ORDERED.**

Dated:  March 31, 2025

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio